UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FLORIDA BEACH ADVERTISING,
LLC, and DAVID M. DUVERNAY,

       Plaintiffs,

v.                            Case No. 8:19-cv-3113-T-33TGW

CITY OF TREASURE ISLAND,
FLORIDA,

       Defendant.

_____/

## ORDER

This matter comes before the Court upon consideration of Defendant City of Treasure Island, Florida's Motion for Summary Judgment (Doc. # 45), filed on November 6, 2020, and Plaintiffs Florida Beach Advertising, LLC, and David M. Duvernay's Amended Motion for Summary Judgment, filed on November 25, 2020. (Doc. # 55). The parties have responded to each Motion. (Doc. ## 57; 61). For the reasons set forth below, both Motions are granted in part and denied in part.

## I.  Background

Duvernay is the owner and operator of Florida Beach Advertising, a business that sells advertising space on a "30-foot-wide, 14-foot-tall digital advertising screen" attached to a boat named the "Get Lit." (Doc. # 48 at 16:4-5, 18:15-22). Although it is disputed precisely where Florida

1

Beach Advertising operates the Get Lit, the parties agree that it advertises around the coast of Pinellas County and within certain waterways. (Doc. # 48 at 23:21-24:4).

On October 5, 2019, Duvernay received a citation for an alleged violation of Section 58-44 of the City's Code of Ordinances, which provides: "No person shall post or display any sign, banner or advertisement unless licensed so to do by the city commission as a concessionaire or a licensee under a written concession or license agreement or lease." (Doc. ## 49-1; 58-1). According to the citation, Duvernay was "observed operating a commercial vessel within the waterways of Treasure Island with an attached electronic/changing advertisement billboard," without the City's permission. (Doc. # 49-1) (emphasis omitted).

Before receiving this citation, Duvernay was planning on participating in the American Legion of Madeira Beach's Twenty-Third Annual Veteran's Day Boat Parade. (Doc. # 48 at 43:23-44:7). In his deposition, Duvernay stated that Plaintiffs intended to sponsor the Parade. (Id. at 45:24-46:6). The Parade begins at the American Legion in Madeira Beach and travels through some of Treasure Island's waterways. (Doc. # 47 at 12:4-12). Because it was set to pass through the City's waterways, Duvernay contacted the City

2

about displaying a sign during the Parade. (Doc. # 48 at 49:2-5). The parties dispute precisely what that request entailed. In his deposition, Duvernay states that he asked a City employee for permission to display a sign that stated, "Thank you, veterans," in the Parade, and told the employee that he "had no intention of doing any advertising whatsoever." (Id. at 51:5-23). The City counters that Duvernay only told the City that he would be participating in the Parade. (Id. at 48:25-49:5). The parties agree, however, that whatever the conversation included, no permit to participate in the Parade was issued. (Doc. # 49 at 30:22-31:4).

Thereafter, on October 16, 2019, Duvernay posted an apology to the social media website Facebook, stating that Plaintiffs would no longer be able to participate in the part of the Parade that passed through the City's waterways:

> For everyone who will be present and supporting our #Veterans at the 2019 23rd Annual Veterans Boat Parade. Unfortunately Florida Beach Advertising will have to stop half through the parade because Treasure Island, Florida and Treasure Island City Hall won't allow us to display a "Thank You Veterans" sign on our boat. We apologize to American Legion Post 273 Madeira Beach, Fl 33708 and American Legion, Post 158, Treasure Island, FL for any inconvenience this may cause.

(Doc. # 48 at 50:18-24, 57:25-58:2; Doc. # 49-3). The Facebook post garnered over 500 comments and included an image of the

3

boat and sign. (Doc. # 49-3). Plaintiffs characterize these comments as critical of the City. (Doc. # 48 at 55:19-21).

The next day, on October 17, 2019, City Commissioner J. Tyler Payne e-mailed Duvernay apologizing for the ordeal and providing him with steps he would have to take to get the City's approval of his sign for the Parade. (Doc. # 48 at 57:5-20; Doc. # 49-4 at 1). Payne followed up, stating: "I just spoke with the City Manager and I am hopeful that we can get the necessary license and authorization on the Agenda for the November 5th Commission Meeting." (Doc. # 49-4 at 1-2). Duvernay then applied through email to the City Commission for a permit to display his sign during the portion of the Parade that travelled through Treasure Island waters. (Doc. # 48 at 57:14-18; Doc. # 49 at 20:19-21:9; Doc. # 49-6). Specifically, Duvernay requested a license under Section 58-44 and a waiver under Section 73-34(10) of the City's Code of Ordinances.[1] (Doc. # 49-6). The City Manager, Garry Brumback responded that he would put the requests before the City Commission at the November 5, 2019, meeting. (Doc. # 49 at

---

1. Section 58-44 of the Code of Ordinances is contained in Chapter 58 of the Code, which regulates waterways. (Doc. # 58-1 at 1). Section 73-34(10) is contained in Chapter 73 (the "Sign Code"), which regulates signs. (Doc. # 49-10). In their complaint, Plaintiffs challenge only the constitutionality of the Sign Code. (Doc. # 1 at ¶¶ 9 n.1, 40, 46, 48-49).

21:10-19; Doc. # 49-6).

At the meeting, Brumback introduced the item by noting that he originally intended to allow Plaintiffs to display the sign during the Parade. (Doc. # 49 at 31:15-21, 32:3-5). However, in Brumback's words, he could no longer recommend doing so "in good conscience" because "at that point it got really ugly and it became a series of bullying and threatening posts on Facebook that even named a couple of members of [the] Commission. And it outwardly stated that [the] Commission was anti-veteran, as was I." (Id. at 31:19-32:5). Following some contentious exchanges, the City Commission voted unanimously to reject Duvernay's request, with Payne absent. (Id. at 45:13-46:8). The City admits that it has no written criteria by which such a request should be evaluated, although other sections of the Code of Ordinances do include certain criteria for the City to grant zoning variances. (Id. at 22:12-15; Doc. # 61 at ¶ 20; Doc. # 60-1). The parties present no evidence that any individual has ever applied for or received an exemption to Section 73-34(10). (Doc. # 49 at ¶ 58:14-18).

Despite the City's denial of his application, Duvernay participated in the Parade as originally planned. (Doc. # 48 at 61:19-62:13). During the length of the Parade, Duvernay displayed a sign stating "Thank You Veterans! God Bless

America," and featuring a bald eagle and American flag:



(Doc. # 48 at 61:22-62:1; Doc. # 49-8 at 8; Doc. # 49-13).
Duvernay did not exit the Parade before entering Treasure
Island waters. (Doc. # 48 at 62:2-7).

At the conclusion of the Parade, Duvernay received a
citation from the Treasure Island police marine unit for
violating Section 73-34(10) of the Sign Code, which prohibits
"[s]igns in or upon any river, bay, lake, or other body of
water within the limits of the city, unless authorized by the
city commission." (Doc. # 48 at 63:24-64:2; Doc. # 49-9; Doc.
# 49-10 at 9-10). The November 9, 2019, citation stated that
Duvernay "was observed in the intracoastal waterway between
Isle of Capri and Isle of Palm" and that "city permission was
denied for the billboard on [November 5, 2019,] to operate
within city limits." (Doc. # 49-9) (emphasis omitted). No

other boat captain participating in the Parade received a citation for violating the Sign Code, despite other boats also displaying signs. (Doc. # 46 at 27:24-28:16, 29:16-19; Doc. # 47 at 27:13-19; Doc. # 48 at 93:9-94:13).

Duvernay was again cited on December 21, 2019, for a purportedly separate violation of Section 73-34(10) of the Sign Code. (Doc. # 49-12). The citation provides that Duvernay was observed advertising with a large electric sign within the City's boundaries. (Id.). The prosecution of all three citations issued by the City against Duvernay is currently pending in state court. (Doc. # 50-1 at 2).

Plaintiffs initiated this action on December 19, 2019. (Doc. # 1). The complaint includes claims against the City for a facial First Amendment challenge (Count I), an as-applied First Amendment challenge (Count II), and preemption of Section 73-34(10) (Count III). (Id.). The City filed an answer on February 27, 2020. (Doc. # 27). The parties now both seek entry of summary judgment in their favor. (Doc. ## 45; 55). Each party has responded, and the Motions are now ripe for review. (Doc. ## 57; 61).

## II. **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue

for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the Court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his [conclusory] allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-

39 (5th Cir. 2004); see also United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed[.]" (citation omitted)).

**III. Analysis**

Both parties have filed Motions for Summary Judgment. (Doc. ## 45; 55). The Court will address each Motion in turn.

**A. City of Treasure Island's Motion**

The City argues that it is entitled to an entry of judgment in its favor because Florida Beach Advertising and Duvernay lack standing to assert their claims. (Doc. # 45 at 2-3). Specifically, the City posits that "Plaintiffs cannot establish standing as to Counts I and II of their Complaint if governance of the waterway that is the subject of the ordinance and citation at issue . . . is preempted by Florida law." (Id. at 3). Further, the City argues that Florida Beach Advertising "lacks standing because there are no facts which demonstrate that there was any enforcement action against it." (Id. at 4).

Standing "is the threshold question in every federal case." Warth v. Seldin, 422 U.S. 490, 498 (1975). Under

10

Article III of the Constitution, standing "requires a plaintiff to provide evidence of an injury in fact, causation, and redressability." Dermer v. Miami-Dade Cnty., 599 F.3d 1217, 1220 (11th Cir. 2010) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). The burden is on Plaintiffs, "as the [parties] seeking to invoke this [Court's] jurisdiction, to produce facts sufficient to support Article III standing." Keister v. Bell, 461 F. Supp. 3d 1152, 1164 (N.D. Ala. 2020). "[W]hen standing is raised at the summary judgment stage, . . . the plaintiff must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion must be taken to be true." Bischoff v. Osceola Cnty., 222 F.3d 874, 878 (11th Cir. 2000) (citations omitted).

### 1. **Injury in Fact**

First, the Court must address whether Plaintiffs have suffered an injury in fact. "An injury in fact requires the plaintiff to show that he personally suffered some actual or threatened injury." CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006) (citations omitted). The injury must be "concrete and particularized, not conjectural or hypothetical." Am. Civ. Liberties Union of Fla., Inc. v. Dixie Cnty., 690 F.3d 1244, 1249 (11th Cir.

11

2012) (citations omitted).

However, "the injury-in-fact requirement is applied 'most loosely where First Amendment rights are involved, lest free speech be chilled even before the law or regulation is enforced.'" Rubenstein v. Fla. Bar, 69 F. Supp. 3d 1331, 1338 (S.D. Fla. 2014) (quoting Harrell v. Fla. Bar, 608 F.3d 1241, 1254 (11th Cir. 2010)). Accordingly, "an actual injury can exist when the plaintiff is chilled from exercising [his] right to free expression or forgoes expression in order to avoid enforcement consequences. In such an instance[,] . . . the injury is self-censorship." Pittman v. Cole, 267 F.3d 1269, 1283 (11th Cir. 2001) (citation omitted).

"Thus, the justiciability of a First Amendment claim does not require the plaintiff to already have been subjected to prosecution; rather, the plaintiff must show that '(1) he was threatened with prosecution; (2) prosecution is likely; or (3) there is a credible threat of prosecution.'" Rubenstein, 69 F. Supp. 3d at 1339 (quoting Am. Civ. Liberties Union v. Fla. Bar, 999 F.2d 1486, 1492 (11th Cir. 1993)). To demonstrate a "credible threat of prosecution," the plaintiff must show: (1) "that he seriously wishes to engage in expression that is at least arguably forbidden by the pertinent law"; and (2) "that there is at least some minimal

probability that the challenged rules will be enforced if violated." <u>Harrell</u>, 608 F.3d at 1260 (citation omitted) (emphasis omitted).

Here, both Duvernay and Florida Beach Advertising have sufficiently demonstrated that they have suffered an injury in fact. Duvernay has been personally cited for purported violations of Section 73-34(10) on at least two occasions, and prosecution of those citations is currently pending. (Doc. # 48 at 88:3-90:4). Additionally, Duvernay has suffered a concrete injury simply by virtue of the fact that his application for an exemption to Section 73-34(10) was denied. (Doc. # 49 at 45:13-46:8); <u>see</u> <u>Tinsley Media, LLC v. Pickens Cnty.</u>, 203 F. App'x 268, 272 (11th Cir. 2006) ("Tinsley Media has shown 'injury in fact' because it was denied a permit to erect the billboards."); <u>Raptis v. Coweta Cnty.</u>, No. 3:07-CV-22-JTC, 2009 WL 10666060, at *4 (N.D. Ga. July 16, 2009) ("The denial of an application to erect a sign is a legally cognizable injury.").

As to Florida Beach Advertising, the City is correct that it has neither been specifically named in a citation, nor has it filed an application for an exemption that was later denied. (Doc. ## 49-1; 49-9; 49-12). However, Plaintiffs allege that Florida Beach Advertising was "forced

to turn the sign off and [was] prevented from advertising in certain areas" "for fear of receiving additional citations." (Doc. # 57 at ¶ 16; Doc. # 48 at 36:24-37:23). Indeed, in his deposition, Duvernay averred that Treasure Island police told one of his customers that he was not "allowed to advertise in Treasure Island," and so the customer "quit paying." (Doc. # 48 at 55:2-7, 75:17-76:5, 78:15-79:21). These are concrete injuries to Florida Beach Advertising's business. See ATM Exp., Inc. v. City of Montgomery, 376 F. Supp. 2d 1310, 1321 (M.D. Ala. 2005) (finding standing where the plaintiff was forced to "terminat[e] its sales" due to the City's enforcement of an ordinance).

Furthermore, the simple fact that Duvernay was the one cited, rather than his company, does not mean that the threat of prosecution is any less potent, considering that Florida Beach Advertising is in the business of operating the Get Lit, and appears to have been the entity planning on sponsoring the Parade. (Doc. # 48 at 15:2-19:15, 45:24-46:6; Doc. # 49-3). Duvernay testified that he purposely does not display signs or advertise in or around Treasure Island waters because of the Sign Code. (Id. at 37:7-13; 39:2-6); see Wollschlaeger v. Farmer, 814 F. Supp. 2d 1367, 1375 (S.D. Fla. Sept. 14, 2011) ("The law personally affects Plaintiffs

because they are currently engaging in self-censorship to avoid potential disciplinary action. This injury is actual."). Accordingly, Plaintiffs have sufficiently shown that both Florida Beach Advertising and Duvernay have suffered an injury in fact because of the City's enforcement of Section 73-34(10) of the Sign Code.

Although Plaintiffs challenge the entire ordinance, the only injury it actually claims to have suffered results from the enforcement of Section 73-34(10) and the denial of an exemption thereunder.[2] (Doc. # 1 at ¶¶ 40, 46). The Sign Code contains numerous other provisions, such as prohibitions on signs that "emit sound, vapor, smoke, odor, particles, or gaseous matter," and others that describe the types of signs that may be used to designate subdivisions in single-family residential areas. (Doc. # 49-10 at 10-11). Plaintiffs have proffered no evidence that they have ever applied for exemptions under any of these other provisions or intend to display any signs other than those subject to Section 73-

---

2. Although Duvernay's first citation, dated October 5, 2019, includes a violation of Section 58-44 of the City's Code of Ordinances, that provision is contained in Chapter 58, the Code's chapter regulating waterways. (Doc. # 49-1; Doc. # 58-1). Because this section is not contained in the Sign Code, and Plaintiffs are only challenging the Sign Code, it is inapplicable here. (Doc. # 1 at ¶¶ 40, 46, 48; Doc. # 58-1).

34(10) of the Code. See CAMP, 451 F.3d at 1273-74 (holding that the plaintiff only had standing to challenge provisions of an ordinance that actually affected it or under which it suffered a demonstrable injury).

Although Plaintiffs contend that they have standing to challenge the entire Sign Code under the overbreadth doctrine, this is incorrect. (Doc. # 55 at 11-12). The overbreadth doctrine allows a plaintiff to mount a facial challenge – as opposed to an as-applied challenge – to a statute under certain circumstances, but it "does not relieve a plaintiff of the burden to prove constitutional standing." Id. at 1270. In CAMP, the Eleventh Circuit faced a similar issue of whether a plaintiff could challenge all provisions of a municipal ordinance when it only proved an injury under one of its provisions, and found that the plaintiff lacked standing to do so:

> The overbreadth doctrine allows CAMP to mount a facial challenge to provisions of the Festivals Ordinance that harm its ability to hold a festival. CAMP "may challenge a statute by showing that it substantially abridges the First Amendment rights of the parties not before the court" although its own activities are not constitutionally protected. Nothing in the overbreadth doctrine allows CAMP to challenge provisions wholly unrelated to its activities. CAMP "must show that [it] has sustained or is immediately in danger of sustaining a direct injury as the result of" each provision in the Festivals Ordinance.

Id. at 1273-74 (quoting Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 505 n.11 (1981); Laird v. Tatum, 408 U.S. 1, 13 (1972)) (alteration in original).

Therefore, Plaintiffs do not have standing to challenge the entire Sign Code, but rather, only Section 73-34(10) thereof. See Fla. Fam. Ass'n, Inc. v. Sch. Bd. of Hillsborough Cnty., 494 F. Supp. 2d 1311, 1328 (M.D. Fla. 2007) ("Thus, even with respect to a First Amendment overbreadth challenge, plaintiffs must establish that they have suffered some injury as a result of the defendant's actions. Moreover, an injury under one provision of a statute or regulation does not confer standing on a plaintiff to challenge all provisions of that statute or regulation." (citations omitted)).

Accordingly, the City's Motion is granted as to Count I and II to the extent Plaintiffs challenge the constitutionality of provisions of the Sign Code other than Section 73-34(10). See Advantage Advert., LLC v. City of Hoover, 200 F. App'x 831, 833, 836 (11th Cir. 2006) (affirming the district court's grant of summary judgment in favor of the defendant with regard to an entire ordinance when the plaintiff's only injury was "the denial of its requests for permits to erect billboards based on [Section] 7.0(D) of the

ordinance.").

### 2. Causation

Next, the Court must determine whether Plaintiffs have sufficiently demonstrated a causal connection between their injury and the City's conduct. People First of Ala. v. Merrill, 467 F. Supp. 3d 1179, 1199 (N.D. Ala. 2020). Because the Court has already entered judgment in favor of the City as to provisions of the Sign Code other than Section 73-34(10), the Court will only address injuries resulting from Section 73-34(10) of the Code.

"A party has standing to challenge only those provisions of a law that caused the complained-of injury." Roma Outdoor Creations, Inc. v. City of Cumming, 599 F. Supp. 2d 1332, 1339 (N.D. Ga. Mar. 2, 2009) (citing Granite State Outdoor Advert., Inc. v. City of Clearwater, 351 F.3d 1112, 1114 (11th Cir. 2003)). "To satisfy the causation requirement, a plaintiff must demonstrate that the injury complained of is fairly traceable to the action complained of." ATM Exp., 376 F. Supp. 2d at 1321.

Here, a causal connection exists between Plaintiffs' injuries and Section 73-34(10) of the Sign Code. But for the Code, and the City's enforcement thereof, Plaintiffs would have been able to display their Veteran's Day sign at the

Parade without receiving a citation. (Doc. # 49 at 45:13-46:8; Doc. # 49-6; Doc. # 49-9). And, absent the Code, Plaintiffs would not fear prosecution from the City for displaying signs in the waters belonging to or near Treasure Island. (Doc. # 48 at 36:24-37:23). Therefore, Plaintiffs have satisfied the causation requirement.

### 3. **Redressability**

Lastly, redressability requires that Plaintiffs "demonstrate a 'substantial likelihood' that a victory would redress [their] injury." ATM Exp., 376 F. Supp. 2d at 1323 (citations omitted). Here, Plaintiffs are seeking, among other things, an injunction prohibiting the City's enforcement of Section 73-34(10) of the Sign Code. (Doc. # 1 at ¶¶ 40, 46). Such an injunction would redress Plaintiffs' injuries. See McDonough v. Fernandez-Rundle, 862 F.3d 1314, 1318 n.2 (11th Cir. 2017) ("Redressability is also sufficiently alleged because an injunction barring such prosecution would redress McDonough's injury.").

Therefore, Plaintiffs have sufficiently demonstrated an injury in fact, causation, and redressability as to the enforcement of Section 73-34(10) of the Sign Code. Although the City argues in its Motion that Plaintiffs lack standing because the ordinance might be preempted, the Court will not

address this argument because, as later discussed, it cannot conclude as a matter of law that Section 73-34(10) is preempted. (Doc. # 45 at 3-4); infra Part III.B.1. It is true that federal courts have developed certain prudential considerations with regard to standing, but the erroneous position that a municipal ordinance is preempted under Florida law does not divest a party of standing. See, e.g., Ruslan Shipping Corp. v. Coscol Petroleum Corp., 635 F.2d 648, 650 (7th Cir. 1980) (explaining that district courts should attempt to decide cases on non-constitutional bases).

Accordingly, Plaintiffs have standing to assert their claims as to Section 73-34(10) of the Sign Code, and the City's Motion is denied to that extent. See Tinsley, 203 F. App'x at 272 ("Tinsley Media has satisfied the three standing requirements. Tinsley Media has shown 'injury in fact' because it was denied a permit to erect the billboards. The injury is causally related to the alleged constitutional violation because the permit application was denied under the provision that prohibits billboards. A favorable decision – invalidation of the provision – would mean Tinsley Media should have received approval of its application and may be entitled to damages. We conclude that Tinsley Media has standing to challenge the prohibition on billboards."

20

(citation omitted)).

   **B. <u>Plaintiffs' Motion</u>**

   In their Motion, Plaintiffs argue that they are entitled to an entry of judgment in their favor on all three counts of the complaint. (Doc. # 55). Because the Court has already found that Plaintiffs lack standing to challenge the constitutionality of provisions of the Sign Code other than Section 73-34(10), the Court will address only allegations as to that provision of the Code.

   The Court will first address Count III, Plaintiffs' state preemption claim, as the "fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." <u>Lyng v. Nw. Indian Cemetery Protective Ass'n</u>, 485 U.S. 439, 445-46 (1988) (citations omitted); <u>see also</u> <u>Bolbol v. Ringling Brothers</u>, No. C-04-0082-JW, 2004 WL 7338786, at *2 (N.D. Cal. Aug. 24, 2004) ("The Supreme Court has indicated that federal constitutional issues should be avoided even when the alternative ground is one of state constitutional law." (citing <u>Carreras v. City of Anaheim</u>, 768 F.2d 1039, 1042 (9th Cir. 1985)) (emphasis omitted). The Court will address the other claims in turn.

### 1. **Preemption of Section 73-34(10)**

In Count III, Plaintiffs argue that Section 73-34(10) of the Sign Code is expressly preempted under the Florida State Constitution. (Doc. # 1 at ¶ 48-49). Specifically, Plaintiffs posit that Section 73-34(10) is preempted by the Florida Vessel Safety Law, which regulates "the operation, equipment, and all other matters relating thereto whenever a vessel shall be operated upon the waters of this state or when any activity regulated hereby shall take place thereon." Fla. Stat. § 327.60(1) (2018). The City does not address this argument in its response to the instant Motion. (Doc. # 61).

"[T]he Court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed." State Farm Mut. Auto. Ins. Co. v. First Care Sol., Inc., 232 F. Supp. 3d 1257, 1262 (S.D. Fla. 2017) (citation omitted). Rather, the Court "must consider the merits of the motion." United States v. One Piece of Real Prop'y Located at 5800 SW 74th Ave., Mia., 363 F.3d 1099, 1101 (11th Cir. 2004). Although the Court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, [it] must ensure that the motion itself is supported by evidentiary materials." Id. "Accordingly, the [Court] must review the evidentiary materials submitted in support of the motion and

22

determine whether they establish the absence of a genuine issue of material fact." Phila. Indem. Ins. Co. v. Manitou Constr. Inc., 115 F. Supp. 3d 1378, 1382-83 (N.D. Ga. 2015) (citation omitted). Thus, the Court turns to the merits of Count III.

"In Florida, a municipality is given broad authority to enact ordinances under its municipal home rule powers." City of Hollywood v. Mulligan, 934 So.2d 1238, 1243 (Fla. 2006). "But municipal ordinances must yield to state statutes." Masone v. City of Aventura, 147 So.3d 492, 495 (Fla. 2014). The Florida Constitution "specifically recognizes the power of municipalities to conduct municipal government, perform municipal functions and render municipal services, and it specifically recognizes that municipalities may exercise any power for municipal purposes *except as otherwise provided by law*." Id. (citation omitted) (emphasis in original). The phrase "'except as otherwise provided by law' . . . establishes the constitutional superiority of the [Florida] Legislature's power over [municipalities]." City of Palm Bay v. Wells Fargo Bank, N.A., 114 So.3d 924, 928 (Fla. 2013).

"Florida law recognizes both express . . . and implied preemption." Vazzo v. City of Tampa, 415 F. Supp. 3d 1087, 1094 (M.D. Fla. 2019). "On one hand, express preemption

requires a specific legislative statement – it cannot be implied or inferred – and the preemption of a field is accomplished by clear language. On the other hand, implied preemption occurs when the state legislative scheme is pervasive and the local legislation would present a danger of conflict with that pervasive scheme." D'Agastino v. City of Miami, 220 So.3d 410, 421 (Fla. 2017) (citations omitted).

"A preemption challenge is a facial attack on the constitutionality of a legal enactment." 828 Mgmt., LLC v. Broward Cnty., No. 20-62166-CIV-SINGHAL, 2020 WL 7635169, at *5 (S.D. Fla. Dec. 21, 2020). Therefore, the Court should consider "only the text of the [allegedly preempted] law, 'not its specific application to a particular set of circumstances.'" Id. (quoting Fraternal Ord. of Police, Mia. Lodge 20 v. City of Miami, 243 So.3d 894, 897 (Fla. 2018)).

In their Motion, Plaintiffs argue only that Section 73-34(10) is expressly preempted. The language of the Florida statute that purportedly preempts Section 73-34(10) states:

> (2) This chapter and chapter 328 do not prevent the adoption of any ordinance or local regulation relating to operation of vessels, *except that a county or municipality may not enact, continue in effect, or enforce any ordinance or local regulation*:
>
> * * *

(c)   Regulating   any   vessel   upon   the   Florida
Intracoastal Waterway.

Fla.  Stat.  §  327.60(2)(c)  (emphasis  added).  The  statute

further defines the Florida Intracoastal Waterway as:

[T]he Atlantic Intracoastal Waterway, the Georgia
state line north of Fernandina to Miami; the Port
Canaveral  lock  and  canal  to  the  Atlantic
Intracoastal  Waterway;  the  Atlantic  Intracoastal
Waterway,  Miami  to  Key  West;  the  Okeechobee
Waterway,  Stuart  to  Fort  Myers;  the  St.  Johns
River,  Jacksonville  to  Sanford;  the  Gulf
Intracoastal  Waterway,  Anclote  to  Fort  Myers;  the
Gulf  Intracoastal  Waterway,  Carrabelle  to  Tampa
Bay;  Carrabelle  to  Anclote  open  bay  section,  using
the Gulf of Mexico; the Gulf Intracoastal Waterway,
Carrabelle  to  the  Alabama  state  line  west  of
Pensacola;  and  the  Apalachicola,  Chattahoochee,  and
Flint Rivers in Florida.

Fla. Stat. § 327.02(15).

Nothing in the Florida Vessel Safety Law states that it

regulates municipalities' waterways. Fla. Stat. § 327.60.

Because  Section  73-34(10)  expressly  restricts  its  scope  to

the City's limits, the statute and ordinance do not explicitly

overlap. (Doc. # 49-10 at 9-10 (stating that the regulation

applies  only  "within  the  limits  of  the  city")).  And,  the

Florida  statute  specifically  notes  that  municipalities  may

regulate bodies of water other than the Florida Intracoastal

Waterway.  Fla.  Stat.  §  327.60(2).  Accordingly,  the  Court

cannot  conclude  as  a  matter  of  law  that  the  Florida  Vessel

Safety Law expressly preempts Section 73-34(10). See Lowe v.

25

Broward Cnty., 766 So.2d 1199, 1207 (Fla. 4th DCA 2000) ("For the legislature to expressly preempt an area, the preemption language of the statute must be *specific*[.]" (emphasis added)). Therefore, the Motion is denied as to Count III.

### 2. **Facial First Amendment Challenge**

In Count I, Plaintiffs allege that Section 73-34(10) is "facially unconstitutional as it contains insufficient standards for local officials to apply and fails intermediate scrutiny as it fails to leave ample room for expression and is not narrowly tailored. The flat prohibition of signs on the water burdens more speech than is reasonably necessary to serve any substantial interest of the City." (Doc. # 1 at ¶ 40). "A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself." Lamar Advert. Co. v. City of Douglasville, 254 F. Supp. 2d 1321, 1326 (N.D. Ga. 2003) (citing Horton v. City of St. Augustine, 272 F.3d 1318, 1329 (11th Cir. 2001)). Plaintiffs seek a declaration that Section 73-34(10) "is facially unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution," as well as temporary and permanent injunctions enjoining the City from enforcing the ordinance, and fees and costs. (Doc. # 1 at ¶ 40).

In their Motion, Plaintiffs argue that they are entitled

to judgment in their favor on Count I because other portions of the Sign Code allegedly regulate content, and so the Sign Code cannot survive strict scrutiny. (Doc. # 55 at 11-17). The City counters that Section 73-34(10) is subject to intermediate scrutiny because it is content-neutral. (Doc. # 61 at 11).

### a. Unbridled Discretion

Regardless of the parties' discussion of the level of scrutiny that should be applied, Section 73-34(10) is unconstitutional because it places "unbridled discretion in the hands of a government official." Lamar, 254 F. Supp. 2d at 1327. Although Plaintiffs do not make an "unbridled-discretion" argument in the part of their Motion that addresses their facial challenge – which relies solely on their theory of strict scrutiny – they do offer this argument in their complaint: "Section 73-34(10), in particular, is facially unconstitutional as it contains insufficient standards for local officials to apply[.]" (Doc. # 1 at ¶ 40). Plaintiffs also make this argument in the portion of their Motion that discusses their as-applied First Amendment challenge, and so this issue has been adequately briefed. (Doc. # 55 at 21; Doc. # 61 at 19).

"To comport with the First Amendment, permitting schemes

27

affecting protected expression cannot place 'unbridled discretion' in the hands of a government official." Lamar, 254 F. Supp. 2d at 1327. "[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." Shuttleworth v. City of Birmingham, 394 U.S. 147, 150-51 (1969). Thus, "[a]n ordinance that gives public officials the power to decide whether to permit expressive activity must contain precise and objective criteria on which they must make their decisions." Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358, 1361 (11th Cir. 1999). "Prior restraints bear a heavy presumption against constitutionality." Stardust, 3007 LLC v. City of Brookhaven, No. 1:14-CV-03534-ELR, 2016 WL 11544441, at *13 (N.D. Ga. Sept. 29, 2016).

Here, Section 73-34(10) is a permitting scheme, as it disallows signs in certain waterways, *unless* allowed by the City. (Doc. # 49-10). However, Section 73-34(10) provides no criteria for the City to determine whether to grant such an exemption. (Doc. # 49 at 22:12-15). Indeed, the City admits that no such criteria exist. (Id.). This sort of unbridled discretion is impermissible under the First Amendment. In Barrett v. Walker County School District, 872 F.3d 1209 (11th

Cir. 2017), the Eleventh Circuit succinctly laid out why this is unconstitutional:

> Perhaps the plainest example of an unconstitutional grant of unbridled discretion is a law that gives a government official power to grant permits but that provides no standards by which the official's decision must be guided. In these circumstances, the official can grant or deny a permit for any reason she wishes. Such a grant of unconstrained power is unconstitutional under the First Amendment for two reasons: first, it creates an incentive for speakers to self-censor in hopes of being granted a permit, and second, it is difficult for courts to determine whether an official's standardless permit decision was impermissibly based on content or viewpoint.

Id. at 1221 (citations omitted).

Despite the fact that the City admits in its response to this Motion that it "does not have any written criteria for how [a request for an exemption to Section 73-34(10)] is to be evaluated by the City Commission," it argues it still passes constitutional muster because there are sufficient criteria for a variance from any sign prohibition in Section 73-32(e) of the Sign Code.[3] (Doc. # 55 at ¶ 20; Doc. # 61 at

---

3. The Court is unsure how to construe on the one hand the City's admission that it considers no criteria in determining whether to grant an exemption to Section 73-34(10), and on the other hand, its argument that it contains sufficient criteria for a variance in other portions of the Code. Perhaps the latter argument addresses the constitutionality of the Code as a whole, given that Plaintiffs do not challenge Section 73-34(10) alone. (Doc. # 49-10). The Court will still consider those other provisions for the sake of this Motion.

¶ 20, Doc. # 61 at 19). Section 73-32(e) states:

> Variances from the terms of these regulations may
> not be contrary to the public interest. Variances
> may be granted where, owing to special conditions,
> the literal enforcement of the provisions would
> result in unnecessary hardship, not to include
> economic hardship. However, no variance shall be
> granted unless the criteria of section 70-221 are
> met. In addition to these usual criteria for
> variances to the provisions of this article, any
> additional signage allowed pursuant to variances
> shall be conditioned in such a way that, taking
> into consideration existing allowable signage in
> the area, the additional signage does not
> exacerbate visual clutter, driver distraction or
> traffic safety in the area.

(Doc. # 49-10 at 6). Section 70-221, which is contained in

the Code's chapter on planning and zoning, states that "[t]he

planning and zoning board or the city commission, as provided

for by this Code, may authorize a variance from the provisions

of the land development regulations that are not contrary to

the public interest." (Doc. # 60-1 at 2). It then states that

a variance can be granted if "[t]he board or commission has

considered the following criteria and find that they have

been substantially satisfied and a hardship exists:"

> a. The variance is in fact a variance as set forth
> within the land development regulations and within
> the province of the board or commission based upon
> the opinion of the city manager or his designee;
>
> b. Special conditions exist which are peculiar to
> the building, structure, or land for which the
> variance is sought and do not apply generally to
> buildings, structures, or lands in the same zoning

district;

c. Strict application of the provisions of the land development regulations would not permit the applicant reasonable use of the building[,] structure, or land;

d. The peculiar conditions and circumstances existing are not the result of the actions of the applicant, the applicant agent's agents, or the applicant's predecessors in title;

e. The variance proposed to be granted is the minimum variance that will make possible the reasonable use of the building, structure, or land;

f. Owing to special conditions, a literal enforcement would result in unnecessary hardship. Special conditions to be considered pursuant to this section of the land development regulations shall include, but not be limited to, the following circumstances:

    1. Redevelopment. If the proposed project involves the redevelopment or utilization of an existing developed or partially developed site.

    2. Substandard lot(s). If the proposed project involves the utilization of an existing legal nonconforming lot(s).

    3. Neighborhood character. If the proposed project promotes the established development pattern of the block face, including setbacks, building height, and other dimensional requirements.

    4. Public facilities. If the proposed project involves the development of public parks, public facilities or public utilities.

    5. Architectural and/or engineering considerations. If the proposed project utilizes architectural and/or engineering

31

features that would render the project more disaster resistant.

g. The granting of the variance will be in harmony with the general purpose and intent of this chapter;

h. The granting of the variance will not be injurious to the neighborhood or otherwise detrimental to the public welfare.

(Doc. # 60-1 at 3) (emphases omitted).

To start, Section 73-32(e) provides an unconstitutional level of discretion to the City, as whether something is in the public interest, or would create undue hardship, does not constitute sufficient criteria. (Doc. # 49-10 at 6); see City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 770 (1988) ("It is apparent that the face of the ordinance itself contains no explicit limits on the mayor's discretion. Indeed, nothing in the law as written requires the mayor to do more than make the statement 'it is not in the public interest' when denying a permit application."); Epona, LLC v. Cnty. of Ventura, 876 F.3d 1214, 1222 (9th Cir. 2017) ("In Moreno Valley, we struck down an ordinance under which, prior to granting a permit, officials were required to find that a structure or sign would not 'have a harmful effect upon the health or welfare of the general public' or be 'detrimental to the welfare of the general public . . . [or] to the

aesthetic quality of the community or the surrounding land uses.'" (quoting <u>Desert Outdoor Advert., Inc. v. City of Moreno Valley</u>, 103 F.3d 814, 818-19 (9th Cir. 1996))).

Regarding Section 70-221, most of its language seems inapplicable to ordinances involving the regulation of signs. (Doc. # 60-1). This is unsurprising considering that the City admits it considers no criteria in deciding whether to grant an exemption to Section 73-34(10). (Doc. # 49 at 22:12-15; Doc. # 61 at ¶ 20). Section 70-221 offers no specific verbiage to allow the Court to determine how the City decides to grant an exemption to the Sign Code. Section 70-221 states that the City may grant a variance after considering the City's "opinion," certain "special" or "peculiar" conditions and circumstances, "hardship," "harmony with [the Code's] general purpose," along with whether the variance would be "injurious to the neighborhood" or "detrimental to public welfare." (Doc. # 60-1 at 3. Again, this is insufficient. <u>See</u> <u>Int'l Outdoor, Inc. v. City of Troy</u>, 361 F. Supp. 3d 713, 717 (E.D. Mich. 2019) ("The court agrees that the variance provision does not contain 'narrow, objective, and definite standards' to guide the Building Code Board of Appeals. The ordinance contains no guidance or limit on the Board's ability to determine whether a variance is 'not contrary to the public

33

interest or general purpose and intent of this Chapter';
whether it would 'adversely affect' properties in the
vicinity; or whether the petitioner has demonstrated a
sufficient 'hardship or practical difficulty' based upon
'unusual characteristics' of the property. . . . These
subjective standards provide latitude for the Board to
potentially reject signs based upon content, under the guise
of acting in the 'public interest.'" (citations omitted)).
Thus, "[n]othing in the law prevents the City from encouraging
some views and discouraging others through the arbitrary
grant or denial of . . . sign permits." Lamar, 254 F. Supp.
2d at 1328-29.

Lastly, the Court notes that none of the sections offered
by the City provide any sort of time limit for the City to
make its decision with regard to granting or denying an
application for an exemption to the Sign Code. See Nittany
Outdoor Advert., LLC v. Coll. Twp., 22 F. Supp. 3d 392, 411
(M.D. Pa. 2014) ("One 'species of unbridled discretion' that
renders a prior restraint unconstitutional is a lack of time
limits on processing applications: '[A] prior restraint that
fails to place limits on the time within which the
decisionmaker must issue the license is impermissible.'"
(quoting FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 223,

34

226 (1990))); see also Lamar Co. v. City of Marietta, 538 F. Supp. 2d 1366, 1374 (N.D. Ga. 2008) ("[T]he lack of time limits allow the City to require one party to wait indefinitely for a permit while another may erect a sign without applying for a permit. This scheme is irreconcilable with the First Amendment.").

Therefore, Section 73-34(10) of the Sign Code is invalidated as an unconstitutional prior restraint on speech. See CAMP, 451 F.3d at 1279 ("The lack of objective criteria in the governmental exemption readily lends itself to harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure, and results in a continuous and pervasive restraint on all freedom of discussion that might reasonably be regarded as within its purview." (citation omitted)); see also Miami For Peace, Inc. v. Miami-Dade Cnty., No. 07-21088-CIV, 2008 WL 3163383, at *8 (S.D. Fla. June 4, 2008) (invalidating an ordinance that prohibited parades "except in accordance with a permit issued by the sheriff," with no other specific criteria).

### b. **Severability**

Because the Court has found that a provision of the Sign Code is unconstitutional, it must determine whether that

provision is severable from the entire ordinance. See Vigue v. Shoar, No. 3:19-cv-186-J-32JBT, 2020 WL 6020484, at *18 (M.D. Fla. Oct. 12, 2020) ("Having found portions of both statutes to be unconstitutional, the Court now turns to the question of whether those portions are severable from the rest of the statute."). "Severability is a question of state law." Id. (citing Wollschlaeger v. Governor, 848 F.3d 1293, 1317 (11th Cir 2017)). "Florida law . . . allows severability absent a severability clause." Foreman v. City of Port St. Lucie, 294 F. App'x 554, 557 (11th Cir. 2008).

Here, Section 73-34(10) is not the crux of the entire Sign Code. Indeed, the Sign Code regulates a number of signs, wholly unrelated to waterways. (Doc. # 49-10). Severing this particular section would not affect any other section of the Code. And, the City's Code of Ordinance includes a severability clause. City of Treasure Island, Fla., Code of Ordinances § 1-13 (1997). Therefore, the Court finds that Section 73-34(10) may appropriately be severed from the remainder of the Sign Code. See Lamar, 254 F. Supp. 2d at 1340 (finding a provision of a sign ordinance unenforceable and concluding it "must be severed from the remainder of the sign ordinance"); see also Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1348 (11th Cir. 2004) ("We

36

are fully satisfied that the purpose of the Amended Sign Code is not defeated by the removal of the purportedly unconstitutional provisions[,] . . . which make up but a small part of the whole.").

### c. Injunction

In their complaint, Plaintiffs seek "temporary and permanent injunctive relief prohibiting [the City] from enforcing the Sign Code." (Doc. # 1 at ¶ 40). "For a permanent injunction to be issued, [Plaintiffs] must: (1) show actual success on the merits of claims asserted in the complaint; (2) establish that irreparable harm will result from failure to provide injunctive relief; (3) establish that the balance of equities tips in [their] favor; and (4) demonstrate that an injunction is in the public interest." Vigue, 2020 WL 6020484, at *19 (citing KH Outdoor v. City of Trussville, 458 F.3d 1261, 1268 (11th Cir. 2006)).

Here, Plaintiffs have succeeded in their claim insofar as Section 73-34(10) is unconstitutional. And, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976); see also Univ. Books & Videos, Inc. v. Metro. Dade Cnty., 33 F. Supp. 2d 1364, 1373 (S.D. Fla. 1999) ("Because chilled speech cannot be

compensated by monetary damages, an ongoing violation of the First Amendment constitutes irreparable injury."). Plaintiffs have suffered and will continue to suffer denial of their First Amendment right to speech in the form of displaying signs in Treasure Island's waterways.

Further, these injuries to Plaintiffs outweigh any harm an injunction might cause to the City, which remains free to enforce the remaining provisions of the Sign Code. See Vigue, 2020 WL 6020484, at *19 ("Injury to Mr. Vigue also outweighs any harm the injunction might cause Sheriff Shoar. Even without [the unconstitutional statutes], Sheriff Shoar is still free to enforce all other state and local laws to maintain safe roadways[.]"); see also Baumann v. City of Cumming, No. 2:07-CV-0095-WCO, 2007 WL 9710767, at *7 (N.D. Ga. Nov. 2, 2007) ("[T]he temporary infringement of First Amendment rights constitutes a serious and substantial injury, and the [City] has no legitimate interest in enforcing an unconstitutional ordinance."). And, the Court finds that such an injunction would serve the public interest. See SisterSong Women of Color Reprod. Just. Collective v. Kemp, 472 F. Supp. 3d 1297, 1328 (N.D. Ga. 2020) ("[A]n injunction here would protect the public interest by protecting those rights to which it too is entitled." (citations omitted)).

Having satisfied all criteria for a permanent injunction, the Court finds such relief proper. <u>Id.</u> Accordingly, the City is hereby enjoined from future enforcement of Section 73-34(10) of the Sign Code. The Court will enter a final permanent injunction order at the close of the case.

### 3. <u>As-Applied First Amendment Challenge</u>

In Count II, Plaintiffs allege that the City's conduct in issuing Duvernay a citation under Section 73-34(10) of the Sign Code "for displaying a message in the [Parade] whilst ignoring all other participants' messages on display in the [Parade] . . . abridged the rights of Plaintiffs to speak on matters of public concern, imposed unlawful penalties for Plaintiffs' speech, and created a chilling effect on Plaintiffs' efforts to honor and celebrate military veterans in the city limits." (Doc. # 40 at ¶ 44-45).

In their Motion, Plaintiffs argue that they are entitled to judgment in their favor on Count II because:

> The City did not cite another vessel, either in 2019 or anytime in the prior 22 annual boat parades, for violating its ordinance. When asked, the City admitted to no prior enforcement against vessels by the City. For reasons well documented by the City Commission itself, the City singled Duvernay out for enforcement not once, but three times, also depriving him of the equal protection of the laws.

(Doc. # 55 at 23). Plaintiffs seek a judgment declaring this conduct unconstitutional and request that the Court "schedule a trial on damages." (Id.). The City responds that "[t]he denial of Mr. Duvernay's request was not based on his requested sign. The denial was based in part on the credibility of his word that any sign he would have in the City of Treasure Island's jurisdiction would be noncommercial" and that "Mr. Duvernay was lawfully cited when he failed to pursue a variance and was found in violation of the City's sign code." (Doc. # 61 at 18-19).

"[T]he constitutional inquiry in an as-applied challenge is limited to the plaintiff's particular situation." Rubenstein, 72 F. Supp. 3d at 1309 (citation omitted). Based on the pleadings and the instant Motion, Plaintiffs appear to base their allegations on the Equal Protection Clause. Given that the Court has already found Section 73-34(10) unconstitutional, it will address this theory alone.[4]

Plaintiffs allege that the City violated Duvernay's equal protection rights by singling him out for enforcement of Section 73-34(10). (Doc. # 1 at ¶¶ 44, 46; Doc. # 55 at

_____

4. The pleadings are not wholly clear as to the differences between Plaintiffs' facial and as-applied challenges, but to the extent that the Court fails to address their claims, Plaintiffs have the opportunity to prove them at trial.

23). The Equal Protection Clause of the Fourteenth Amendment "requires the government to treat similarly situated individuals alike." Roma, 599 F. Supp. 2d at 1342. "A plaintiff asserting an Equal Protection claim must show that he is either a member of a protected class or that the defendant intended to treat him differently from others similarly situated without a rational basis for the disparate treatment." Id. at 1342-43 (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)). With regard to the latter claim, which is known as a "class of one" claim, the plaintiff "must demonstrate an extremely high level of similarity between the plaintiff and the allegedly similarly situated comparators." Id. at 1343. Indeed, with regard to denied permit applications, both the plaintiff's and the other granted applications must "be prima facie identical in all relevant respects." Campbell v. Rainbow City, 434 F.3d 1306, 1314 (11th Cir. 2006) (emphasis omitted).

Here, Plaintiffs do not argue, let alone allege that Duvernay is a member of a protected class. Therefore, the Court turns to Plaintiffs' class of one claim. Given that the parties offer no proof of any other individual that has been granted an exemption to the Sign Code, this claim fails as to the denial of an exemption to Section 73-34(10). See Jucha v.

City of N. Chicago, 63 F. Supp. 3d 820, 830-31 (N.D. Ill. 2014) (dismissing the plaintiff's equal protection claim because he had "not plausibly alleged that he is similarly situated to his comparator"); (Doc. # 49 at ¶ 58:14-18). Indeed, Plaintiffs provide no other identical application to compare to Duvernay's application and the City's subsequent denial of that application, as required by Eleventh Circuit authority. See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1204 (11th Cir. 2007) ("[A] 'showing that two projects were similarly situated requires some specificity, and . . . 'must be prima facie identical in all relevant aspects.'" (quoting Campbell, 434 F.3d at 1314) (emphasis omitted)).

Similarly, with the citation, there remains a genuine issue of material fact as to whether Plaintiffs were similarly situated to other Parade attendees, such that others' signs would not already have been exempted from the Sign Code. Any boat carrying flags, for example, might be exempt from enforcement of the Code. (Doc. # 49-10 at 8). Therefore, the Court cannot conclude at this juncture that there was a high degree of similarity between Duvernay and the other individuals displaying signs. Furthermore, to the extent that the City's basis for issuing Duvernay any of the citations was because it had not granted Plaintiffs a variance or

42

exemption, and this was based on a misapplication or misunderstanding of the Sign Code, this may very well constitute a rational basis for the City's treatment of Duvernay. (Doc. # 61 at 19); see Roma, 599 F. Supp. 2d at 1343 ("The mistaken application of a law may constitute a rational basis.").

Therefore, Plaintiffs have failed to carry their burden of proving no genuine issue of material fact that needs to be determined at trial as to Count II, and the Motion is denied as to this requested relief.

## IV.  **Conclusion**

The parties' Motions are granted in part and denied in part. The City's Motion is granted to the extent that Plaintiffs challenge the entire Sign Code. However, Plaintiffs have standing to challenge Section 73-34(10) of the Sign Code. Plaintiffs' Motion is granted as to Count I, and the City is enjoined from enforcing Section 73-34(10) of the Sign Code. The Motion is denied as to Count II, as there remain genuine issues of material fact that need to be decided at trial. The Motion is denied as to Count III because the Court cannot conclude as a matter of law that Section 73-34(10) is expressly preempted by Florida state law.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant City of Treasure Island, Florida's Motion for Summary Judgment (Doc. # 45) is **GRANTED** in part and **DENIED** in part as set forth herein.

(2)   Plaintiffs' Amended Motion for Summary Judgment (Doc. # 55) is **GRANTED** as to Count I and **DENIED** as to Counts II and III.

(4)   Section 73-34(10) of the City's Sign Code is an unconstitutional prior restraint on speech and the City is hereby enjoined from enforcing it. The Court will enter a final permanent injunction order at the close of the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>6th</u> day of January, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE